IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
MARY H. JOHNSON, M.D.,                  )
                                        )
                Plaintiff,              )
                                        )
        v.                              )
                                        )
AZZIE CONLEY, CHIEF, NORTH              )
CAROLINA DEPARTMENT OF HEALTH           )
AND HUMAN SERVICES, ACUTE AND           )        1:24CV241
HOME CARE LICENSURE AND                 )
CERTIFICATION SECTION and LINDA         )
SMITH, DIRECTOR, ATLANTA SURVEY         )
OPERATIONS GROUP, ENFORCEMENT,          )
CENTERS FOR MEDICARE AND                )
MEDICAID SERVICES,                      )
                                        )
                Defendants.[1]          )
```

## MEMORANDUM ORDER

This matter came before the court on the motions to dismiss of Defendant Azzie Conley, Chief, North Carolina Department of Health and Human Services ("NCDHSS"), Acute and Home Care Licensure and Certification Section and Defendant Linda Smith, Director, Atlanta Survey Operations Group, Enforcement, Centers for Medicare and Medicaid Services ("CMS"). (Doc. 9; Doc. 12.) Plaintiff Mary H. Johnson, M.D., proceeding pro se, responded in opposition to the motion (Doc. 16), and Smith replied. (Doc. 17.)

In substance, Dr. Johnson alleges that Defendants Conley and

---

[1] The caption of the complaint lists the "United States of America" as the only Defendant, but the body of the complaint names only Conley and Smith as Defendants. (Doc. 1 at 2.)

Smith are liable under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq., for declining to find a violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, after they received Dr. Johnson's EMTALA complaint. (Doc. 1 at 4.) Specifically, Dr. Johnson contends that Defendants' negligence in investigating and failing to find a potential EMTALA violation prevented her from filing an EMTALA whistleblower retaliation claim and, ultimately, left her with no recourse after she was allegedly wrongfully terminated by her employer. (Id. at 6.)

On August 29, 2025, the court held a hearing on Defendants' motions. During the hearing, Dr. Johnson voluntarily dismissed her claims against Conley. After hearing oral argument, and for the reasons stated at the hearing, the court granted Smith's motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The purpose of this order is to memorialize the court's ruling.

Dr. Johnson appears pro se. Thus, her complaint is "not . . . scrutinized with such technical nicety that a meritorious claim should be defeated." Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). But the liberal construction of a pro se litigant's filing does not require the court to ignore clear defects in it, Bustos v. Chamberlain, No. 09-1760, 2009 WL 2782238,

2

at *2 (D.S.C. Aug. 27, 2009), or to become an advocate for the pro se party, Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990); see also Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) (noting that "[d]istrict judges are not mind readers"). Moreover, pro se parties are expected to comply with applicable procedural rules. See Chrisp v. Univ. of N.C.-Chapel Hill, 471 F. Supp. 3d 713, 715-16 (M.D.N.C. 2020) (requiring pro se plaintiff to comply with the Federal Rules of Civil Procedure).

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion to dismiss is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's

3

favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 555, 570; see also Iqbal, 556 U.S. at 678. Thus, mere legal conclusions should not be accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

According to the complaint, from March 2018 to April 2020, Dr. Johnson worked as an independent contractor with North Carolina Group Services, PLLC and provided pediatric services at Central Carolina Hospital. (Doc. 1 at 8.) On January 6, 2020, Dr. Johnson arrived at work to find a newborn infant "actively seizing" with a medical assessment score that indicated "medical instability." (Id. at 9.) She quickly intervened and stabilized the infant for transfer to a nearby neonatal intensive care unit. (Id. at 11.) Dr. Johnson then repeatedly emailed several supervisors to detail her concerns regarding the infant's care. (Id. at 12.) However, her supervisors did not follow up on these concerns, and leadership ultimately informed Dr. Johnson that she would be terminated

4

without cause. (Id. at 12-13.) Her last day at Central Carolina Hospital was April 11, 2020. (Id. at 14.)

Dr. Johnson filed a formal complaint with NCDHSS regarding the above-described events while serving out her notice of termination. (Id. at 13.) When NCDHSS declined to find an EMTALA violation based on the allegations in Dr. Johnson's complaint, Dr. Johnson next sought review of NCDHSS's decision with CMS. (Id. at 17.) However, CMS likewise did not find an EMTALA violation based on Dr. Johnson's allegations. (Id. at 21.) As a result, Dr. Johnson filed an administrative FTCA complaint against CMS on July 27, 2022. (Id. at 6.) The complaint was denied, and Dr. Johnson subsequently commenced this lawsuit. (Id.)

In support of her motion to dismiss, Smith advances three primary arguments. First, she contends that Dr. Johnson failed to allege a tort claim actionable under state law, as required by the FTCA. (Doc. 13 at 8-9.) Second, Smith argues that, even if Dr. Johnson did plead an actionable claim pursuant to North Carolina law, the FTCA's discretionary function exception precludes liability in the context of EMTALA investigations. (Doc. 17 at 3.) Third, Smith contends that Dr. Johnson's FTCA claim is time-barred. (Doc. 13 at 10.) The court addresses each argument in turn.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." F.D.I.C. v. Meyer, 510

U.S. 471, 475 (1994). Accordingly, any claim Dr. Johnson may have against Smith would arise, if at all, under the FTCA.[2] However, although the FTCA "waived the sovereign immunity of the United States for certain torts committed by federal employees," id., the FTCA "does not create new causes of action; 'the mere allegation of a breach of duty under Federal law does not, by itself, state a valid tort claim against the Government,'" Fla. Auto Auction of Orlando, Inc. v. United States, 74 F.3d 498, 501 (4th Cir. 1996) (quoting Goldstar (Pan.) S.A. v. United States, 967 F.2d 965, 969 (4th Cir. 1992)). Rather, the FTCA "only serves to convey jurisdiction when the alleged breach of duty is tortious under *state* law." Goldstar, 967 F.2d at 969. Yet North Carolina has never recognized a claim that "rests entirely upon discretionary actions that were taken in pursuit of [a] department's statutory authority to regulate." Cedarbrook Residential Ctr., Inc. v. N.C. Dep't of Health & Hum. Servs., 881 S.E.2d 558, 572-73 (N.C. 2022).

Here, Dr. Johnson alleges that Smith negligently investigated her EMTALA complaint. (Doc. 1 at 4.) But as already noted, claims that allege "what amounts to 'negligent regulation'" have never

---

[2] Dr. Johnson's complaint references an alleged violation of EMTALA by the Federal Government. But the only claim available to Dr. Johnson under EMTALA would be a whistleblower retaliation claim against her former employer. See 42 U.S.C. § 1395dd(d)(2)(A), (i); see also Fotia v. Palmetto Behav. Health, 317 F. Supp. 2d 638, 643 (D.S.C. 2004) (finding that "the intent of [EMTALA] is to allow private individuals harmed by EMTALA violations to sue the hospitals that caused the harm").

6

been recognized in North Carolina. Cedarbrook Residential Ctr., 881 S.E.2d at 573. Accordingly, at most, Dr. Johnson has alleged the breach of a duty imposed by EMTALA, a federal law. Thus, she fails to plead a viable FTCA claim. See Williams v. United States, 242 F.3d 169, 173 (4th Cir. 2001) ("It is virtually axiomatic that the FTCA does not apply where the claimed negligence arises out of the failure of the United States to carry out a [federal] statutory duty in the conduct of its own affairs." (alteration in original) (quoting Sea Air Shuttle Corp. v. United States, 112 F.3d 532, 536 (1st Cir. 1997))).

Next, the FTCA's discretionary function exception also compels the court to dismiss Dr. Johnson's claims. The discretionary function exception exempts certain government conduct from FTCA liability. See United States v. Gaubert, 499 U.S. 315, 334 (1991). To determine whether the exception applies, a court must first determine whether the challenged act involves "an element of judgment or choice." Berkovitz v. United States, 486 U.S. 531, 536 (1988). If so, the court must next decide "whether the challenged action is 'based on considerations of public policy.'" Suter v. United States, 441 F.3d 306, 311 (4th Cir. 2006) (quoting Berkovitz, 486 U.S. at 536). Indeed, "the purpose of the exception is to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in

7

tort.'" Gaubert, 499 U.S. at 323 (quoting Berkovitz, 486 U.S. at 536-37).

The discretionary functions exception "plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals." United States v. Varig Airlines, 467 U.S. 797, 813-14 (1984). Therefore, government investigations and regulatory decisions based on those investigations are typically considered discretionary acts. See, e.g., Donahue v. United States, 870 F. Supp. 2d 97, 105-06 (D.D.C. 2012) (dismissing an FTCA claim against the Securities and Exchange Commission ("SEC") for negligently handling the investigation into the Bernard Madoff Ponzi scheme because "the SEC's broad power to conduct investigations into securities law violations is discretionary in nature").

Unlike, for example, the SEC's investigatory responsibilities under the Securities Exchange Act of 1934, Smith's statutory duty to investigate alleged EMTALA violations lacks explicit discretionary language. Compare 15 U.S.C. § 78u(a)(1) (providing that the SEC may, "in its discretion," make investigations as it deems necessary), with 42 U.S.C. § 1395dd(d)(3) (providing that the Secretary of the United States Department of Health and Human Services "shall request" quality improvement organizations to "assess" alleged EMTALA violations). However, no statute, regulation, or policy dictates the specific findings a quality

8

improvement organization must make when investigating alleged EMTALA violations.³  This investigation relies exclusively on the judgment of expert physician reviewers, who consider the exact sort of "social, economic, and political policy" shielded from judicial second-guessing by the FTCA's discretionary function exception.

Finally, to the extent Dr. Johnson's complaint against Smith relates to her alleged wrongful termination, Smith is correct that the claim is untimely.  A defense based on the statute of limitations is an affirmative defense, which can be the basis of a motion to dismiss under Rule 12(b)(6).  Dean v. Pilgrim's Pride Corp., 395 F.3d 471, 474 (4th Cir. 2005).  Nevertheless, dismissal under Rule 12(b)(6) based on the statute of limitations occurs in "relatively rare circumstances."  Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007).  To succeed on a statute-of-limitations defense at this stage, all facts necessary to show the time bar must clearly appear "on the face of the complaint."  Dean, 395 F.3d at 474.

Under the FTCA, "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the

---

³ Indeed, Dr. Johnson's own documentation that she offered in response to Defendants' motions to dismiss (Doc. 16-1 at 3) shows that the quality improvement organization's expert physician reviewers "evaluate the care, or lack of care, provided in accordance with national standards of practice."  Thus, even if the court were to convert Smith's motion to one for summary judgment under Federal Rule of Civil Procedure 56, Dr. Johnson's claim would still not survive.

9

appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). An FTCA claim accrues "when the plaintiff knows or, in the exercise of due diligence, should have known both the existence and the cause of [her] injury." <u>Gould v. U.S. Dep't of Health & Hum. Servs.</u>, 905 F.2d 738, 742 (4th Cir. 1990).

Here, Dr. Johnson's alleged wrongful termination occurred at the latest on April 11, 2020. (Doc. 1 at 14.) However, as her complaint alleges and as she conceded in open court, Dr. Johnson did not file her administrative FTCA complaint with Smith until July 27, 2022. (<u>See</u> Doc. 1 at 6.) Dr. Johnson has not alleged or pointed to any extraordinary circumstance that delayed the filing of her FTCA complaint. <u>See</u> <u>United States v. Kwai Fun Wong</u>, 575 U.S. 402, 407-08 (2015) (holding that the FTCA statute of limitations is subject to equitable tolling and may be paused only if "some extraordinary circumstance" caused the plaintiff's delay). Thus, even if Dr. Johnson could be said to have any FTCA claim against Smith related to her termination, it is time-barred by the two-year statute of limitations. For these reasons,

IT IS THEREFORE ORDERED that the motions to dismiss by Defendants Conley (Doc. 9) and Smith (Doc. 12) are GRANTED and Dr. Johnson's complaint (Doc. 1) is DISMISSED WITH PREJUDICE.

The Clerk of Court is directed to close this case.

```
                                         /s/   Thomas D. Schroeder
September 3, 2025                     United States District Judge
```